CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
JUL -2 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HUGH KEVIN WOODDELL,<br>    Petitioner, | Civil Action No. 7:13-cv-00139 |
| v. | MEMORANDUM OPINION |
| EARL BARKSDALE,<br>    Respondent. | By:  Hon. Jackson L. Kiser<br>       Senior United States District Judge |

Hugh Kevin Wooddell, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I grant respondent's motion to dismiss because petitioner's claims are either procedurally barred or meritless.

## I.

The Circuit Court of Bath County sentenced petitioner to an active sentence of nine years' incarceration for two counts of possessing Schedule II controlled substances and one count of being a felon in possession of a firearm. Petitioner's appeals to the Court of Appeals of Virginia and the Supreme Court of Virginia were unsuccessful.

Petitioner filed a habeas petition with the Supreme Court of Virginia, arguing multiple instances of prosecutorial misconduct and the ineffective assistance of both trial and appellate counsel. The Supreme Court of Virginia dismissed the habeas petition after considering the various claims to be either procedurally barred or meritless.

Petitioner timely filed the instant federal petition, arguing five specific claims.

1. The evidence at trial was insufficient to convict petitioner of one count of possession of a firearm;

2. The evidence at trial was insufficient to convict petitioner of two counts of possession of Schedule II controlled substances;

3. The trial court erred by sustaining the Commonwealth's objection and by not allowing evidence of the seizures of firearms from Tonya Howard's[1] residence;

4. The prosecutor committed misconduct by commenting during his opening statement that witnesses Howard and Fox were not "stellar" people but "in these kind[s] of cases you've got to use these kinds of people." Petitioner argues that this statement constituted "guilt by association" by putting petitioner "in the category of gun dealer as Howard was when she was previously convicted of said crimes." Petitioner further alleges that Fox recanted her prior statement and instead said she was not present with Howard when the gun sale occurred, and thus, the prosecutor would have had to lie to the grand jury to get an indictment against petitioner. The prosecution was vindictive and the prosecutor trumped up the firearm charge because petitioner had a business contract with prosecutor's family that "went south" due to a disagreement.

5. Counsel was ineffective for failing (a) to request a jury trial after the judge threatened a witness, (b) to question Fox about conversations with Warren Craven, and (c) to file a motion to set aside the verdict when Fox said after trial and before sentencing that she perjured herself and wanted to recant her trial testimony.

Respondent argues in support of a motion to dismiss that petitioner's claims are either procedurally barred or meritless.

## II.

Petitioner argues in claim 3 that the trial court improperly excluded testimony about police seizing more than forty firearms from Howard's house before Howard purchased a firearm from petitioner.[2] The "admission of evidence in state trials is ordinarily governed by

---

[1] As explained in greater detail in section IV.B., Tonya Howard was the informant who made a controlled purchase of a firearm from petitioner and testified at trial for the Commonwealth. Tina Fox, who accompanied Howard to the controlled purchase, also testified for the Commonwealth.

[2] Petitioner believes the excluded evidence was critical to establish that Howard smuggled a gun from her house

state law." Perry v. New Hampshire, 565 U.S. ___, ___, 132 S. Ct. 716, 720 (2012). Federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). See 28 U.S.C. § 2254(a) (limiting federal habeas relief from a state court judgment only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States).

During cross examination, counsel asked a police officer whether "[t]here was a point where the task force seized forty-some odd guns from [Howard's] home[.]" The Commonwealth objected to the relevance of the information because Howard was not charged with any crime related to those firearms. The trial court sustained the Commonwealth's objection, and the Commonwealth noted that the seizure of firearms occurred before Howard purchased a firearm from petitioner.

No constitutional issue was argued to the trial court, and no constitutional issue is apparent from the record. Petitioner has not demonstrated that precluding questions about the seizure of firearms from Howard's home made the trial fundamentally unfair. Accordingly, federal habeas relief is not available to review an evidentiary issue based on state law, and I decline to consider the merits of claim 3. See Estelle v. McGuire, 502 U.S. 62, 70 (1991) (declining to reach the question whether it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial).

---

(despite the fact the firearms in her home were seized before the controlled purchase), slipped the gun past two police officers who searched Fox, Howard, and Howard's car, met with petitioner, and then gave the smuggled gun to police officers while saying she purchased the firearm from petitioner.

## III.
### A.

A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). See 28 U.S.C. § 2254(b) (mandating exhaustion). The purpose of exhaustion is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 846 (1999). The exhaustion requirement is satisfied by finding that the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). Therefore, petitioner must present both the same argument and factual support to the state court prior to filing the claim with a federal court. Anderson v. Harless, 459 U.S. 4, 6-7 (1982).

Respondent argues that petitioner did not present sufficiently similar claims to the Supreme Court of Virginia for what is now argued in claims 4 and 5(a). Petitioner admits that the wording of claim 4 changed but argues that the context is the same. Instead of copying the exact words of the fourteen specific allegations of prosecutorial misconduct described in the state petition, petitioner "rearranged" the claims "in a more parsimonious way" in the federal petition.

Petitioner recites three specific examples of prosecutorial misconduct in the federal petition: 1) the prosecutor's opening statement that associated petitioner with felons Howard and Fox; 2) the prosecutor's alleged lie to the grand jury; and 3) the prosecutor's vindictive

4

prosecution because of a business disagreement. None of the state petition's fourteen claims relate to the prosecutor's 1) opening statement, or 2) alleged lie to the grand jury. Petitioner alleged in the state petition that the prosecutor vindictively prosecuted him because the prosecutor believed petitioner had "a relationship" with the prosecutor's wife; however, petitioner argues in the federal petition that the prosecutor prosecuted petitioner because petitioner "had a business contract with the [prosecutor]'s family[] that went south due to a disagreement." (Br. Supp. Pet. 11.) Consequently, these different factual bases of prosecutorial misconduct preclude finding that petitioner presented the same arguments and facts now asserted in claim 4 to the Supreme Court of Virginia.

For claim 5(a), petitioner argues trial counsel was ineffective for not requesting a jury trial after the judge allegedly threatened a witness. However, petitioner argued in the state petition that trial counsel was ineffective because "after asserting his right to a jury trial, [trial] counsel did not work to secure it for him. Instead, [counsel] advised [petitioner] that he knew the judge and that 'he was a fair man.'" (State Habeas Pet. (ECF no. 13) ii.) Thus, petitioner's arguments about the right to a jury trial differ in both argument and factual bases between the instant petition and the state habeas petition. Accordingly, petitioner also failed to exhaust state court remedies for claim 5(a).

### B.

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). "[T]he exhaustion

5

requirement for claims not fairly presented to the state's highest court is technically met when . . . a state procedural rule would bar consideration if the claim was later presented to the state court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) (citations omitted) (overturned on other grounds by Miller-El v. Dretke, 545 U.S. 231, 241 (2005)).

Unexhausted claims 4 and 5(a) are treated as technically exhausted because state laws fixing the limitations period for habeas petitions and barring successive habeas petitions prevent petitioner from returning to state court to present the claims to the Supreme Court of Virginia. See Va. Code § 8.01-654(A)(2) (prohibiting a state habeas petition to be filed, inter alia, more than one year after the conclusion of direct review); id. § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."). Petitioner would be further barred from raising claim 4 pursuant to Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), which bars a state court from considering a non-jurisdictional claim that could have been presented at trial and on appeal but was not. Consequently, claims 4 and 5(a) are treated as technically exhausted.

## C.

A federal court may not review a procedurally defaulted claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). The existence of cause ordinarily turns upon a showing of ineffective assistance of counsel, a factor external to the defense that impeded compliance with the state procedural rule, or the novelty of the claim. Id. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). See Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309 (2012) (creating a limiting qualification to Coleman for "substantial" claims of ineffective assistance of trial counsel where

6

the cause was either no counsel or the ineffective assistance of counsel during the initial state collateral proceeding). A petitioner's unfamiliarity with law or a court's procedural rules does not provide a basis for establishing cause. See, e.g., Harris v. McAdory, 334 F.3d 665, 668-69 (7th Cir. 2003) (finding that a petitioner's pro se status does not constitute adequate ground for cause). A "fundamental miscarriage of justice" occurs in the extraordinary case where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495 (1991). Petitioner cannot establish that a fundamental miscarriage of justice exists because a review of the trial record reveals the sufficiency of the evidence to sustain his convictions for being a felon in possession of a firearm and possessing Oxycodone and methamphetamine. See discussion infra Part III.B. (describing the evidence as sufficient to sustain the convictions). Petitioner does not explain cause or prejudice to excuse procedurally defaulting claim 4.

  Claim 5(a) does not present a "substantial" claim of ineffective assistance of trial counsel to excuse a procedural default. See Martinez, 132 S. Ct. at 1322 n.3 ("The Court says that to establish cause a prisoner must demonstrate that the ineffective-assistance-of-trial-counsel claim is "substantial," which apparently means the claim has at least some merit. The Court does not explain . . . how it differs from the normal rule that a prisoner must demonstrate actual prejudice to avoid the enforcement of a procedural default[.]") (Scalia, J., dissenting). A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's

representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."[3] Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

Petitioner alleges in claim 5(a) that trial counsel was ineffective for failing to request a jury trial after the judge allegedly threatened a witness. The state court record establishes that petitioner told counsel he did not want a jury trial because he feared a lengthy sentence if convicted. Petitioner also acknowledged in open court that he had discussed the advisability of a trial with and without a jury and that he decided for himself to waive a jury trial. (Tr. 10-11.) Moreover, the trial court did not threaten a witness.[4] Accordingly, Claim 5(a) does not present a substantial claim of ineffective assistance of counsel, and claims 4 and 5(a) must be dismissed as procedurally defaulted.

---

[3] If a petitioner has not satisfied one prong of the Strickland test, a court does not need to inquire whether he has satisfied the other prong. Id. at 697. "[A]n attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation." Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998). Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id. "[E]ffective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978).

[4] The witness was hesitant to testify, citing her fear of petitioner, and the court began to question the witness about her hesitancy despite being served a subpoena to testify. The court asked the witness, "I understand you don't want to [testify]. It's not a question whether you want to. A lot of people don't want to be here today, but they're here today. All right?" The witness affirmed, and the court asked, "Now, who do you think is going to cause you the most harm right now, [petitioner] who is locked up or me?" The witness acknowledged the judge had authority in the courtroom and then testified without further hesitation.

# IV.
## A.

Claims 1, 2, 5(b), and 5(c) are exhausted and appropriate for federal review. A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudication of a claim is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue if the result reached is not contrary to that established precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003). Furthermore, "[a]

state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). See, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

## B.

Petitioner argues in claims 1 and 2 that the evidence was insufficient to prove that he possessed two Schedule II controlled substances, in violation of Virginia Code § 18.2-250(A),[5] or was as felon in possession of a firearm, in violation of Virginia Code § 18.2-308.2.[6] The Court of Appeals of Virginia held that the evidence was sufficient to convict petitioner of possessing Oxycodone and methamphetamine and being a felon in possession of a firearm after viewing the evidence in the light most favorable to the Commonwealth.[7] See Jones v. Murray,

---

[5] Virginia Code § 18.2-250(A) makes it "unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by . . . § 54.1-3400 et seq.[]"

[6] Virginia Code § 18.2-308.2 states in pertinent part:
>    It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm . . ., or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described [as any pistol, revolver, or other weapon designed or intended to fire a bullet.]

[7] Petitioner presented these claims to the Supreme Court of Virginia on direct appeal from the decision of the Court

947 F.2d 1106, 1110 (4th Cir. 1991) (stating written findings of historical fact by the state court are presumed to be correct and entitled to deference unless shown to be erroneous).

The due process clause of the Fourteenth Amendment protects a state court defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state court conviction will not be disturbed if the federal habeas court determines that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" after viewing the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (original emphasis). I have reviewed the trial record, which the Court of Appeals of Virginia aptly summarized as follows:

> [O]n October 23, 2009, Officer Winfred Smith arranged for Tonya Howard, a paid informant, to purchase a firearm from [petitioner]. Smith knew [petitioner] was a convicted felon. Smith and Officer Richard Walton met Howard and Tina Fox. Smith searched Howard and her truck and he gave her $150. Walton searched Fox. In an unmarked vehicle, the officers followed Howard and Fox to [petitioner]'s trailer and they kept Howard's vehicle in sight the entire time. Smith saw Howard's truck pull up to [petitioner]'s trailer, but he remained on the main road. Smith testified he could see [petitioner]'s trailer from the road. Smith testified Howard was at [petitioner]'s trailer for approximately eighteen minutes. The officers followed Howard's truck after she left [petitioner]'s trailer, and they stopped at an agreed location. Smith testified Fox immediately handed him a 38-caliber pistol. Smith testified based upon information he received concerning [petitioner], Howard did not wear a wire during the transaction.
>
> Howard testified she was a convicted felon and had been convicted of misdemeanors involving lying, cheating or stealing. Howard testified she arranged to purchase a firearm from [petitioner] prior to October 23, 2009. Howard testified she went to [petitioner]'s residence and spoke with [petitioner], Warren Craven, and Samantha Lane, [petitioner]'s girlfriend. Howard testified [petitioner] reached

---

of Appeals of Virginia, but the Supreme Court of Virginia refused to disturb the Court of Appeals of Virginia's decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that a federal court can rely on a reasoned state court judgment resting primarily on federal law when later unexplained state court orders uphold that judgment).

11

down near the door of the trailer, retrieved a firearm, she gave him $150, and he gave her the firearm.

Fox testified she knew [petitioner] for twenty years. Fox testified she was with Howard and Walton searched her. Fox testified Walton found Oxycodone when he searched her. Fox testified the medication was in a prescription bottle for a leg injury and Walton let her keep her prescription medication. Fox testified she accompanied Howard to [petitioner]'s trailer, she saw Howard speak with [petitioner], and Howard left [petitioner]'s trailer with a firearm. Fox admitted she was a convicted felon and had been convicted of misdemeanors involving stealing.

Craven testified he was inside [petitioner]'s trailer when Howard and Fox arrived. Craven testified Lane was also present and Howard and Fox remained outside the trailer. Lane testified she did not see [petitioner] give Howard a firearm. Jessica McClung testified Fox later told her that the firearm was planted. McClung testified Fox did not have a reputation for truthfulness in the community. McClung admitted she was a convicted felon. Donnica Doubet, McClung's mother, testified Fox told her that Howard went to [petitioner]'s trailer and tried to sell him a firearm. Doubet admitted she was a convicted felon.

[Petitioner] testified Howard and Fox came to his trailer and they spoke to them about a stolen crossbow. [Petitioner] denied selling a firearm to Howard.

\* \* \*

In January 2010, [petitioner] was indicted for the firearm offense and Walton assisted in [petitioner]'s arrest on February 1, 2010. Walton saw [petitioner] and Lane leave [petitioner]'s sister's house in a vehicle, and Walton stopped [petitioner]. Officer Bill Wagner found a small pill bottle in [petitioner]'s front pocket that contained prescription pills and a crystal-like rock substance. Walton testified the bottle was not a brown prescription bottle, but it was a white bottle and it resembled a bottle for an over-the-counter medication. A certificate of analysis showed that the bottle contained fourteen round tablets of Oxycodone and a plastic bag comer containing methamphetamine.

Lane testified the Oxycodone and methamphetamine in [petitioner]'s pocket belonged to her. Lane testified [petitioner] took the substances from her approximately twenty minutes prior to being arrested. Lane explained that [petitioner] took the substances from her because he was mad at her and he did not like her "doing stuff." Lane testified [petitioner] did not know what was in the bottle and only knew it would "mess" her up. Lane admitted she used drugs with [petitioner], but on February 1, 2010, he was no longer using drugs and he was upset she was still using drugs. Lane admitted [petitioner] did not flush the drugs down the toilet at his sister's house.

12

> Howard testified that at the time she purchased the firearm from [petitioner], [petitioner] said that he had wrist pain and Fox gave him three or four pain pills. Fox testified she showed [petitioner] the bottle containing Oxycodone and told him the medication was for a leg injury. [Petitioner] testified Fox offered him Oxycodone, but he did not take it. [Petitioner] testified he knew Fox had a prescription for Oxycodone.

Wooddell v. Commonwealth, No. 2496-10-3, slip op. at 2-5 (Va. Ct. App. May 19, 2011). See Tr. 20-32, 34-37, 41, 45, 56-66, 76, 82-89, 99-101, 106-12, 117-18, 121-22. After hearing this evidence, the trial court found petitioner guilty of possessing two controlled substances, Oxycodone and methamphetamine, and being a felon in possession of a firearm.

After reviewing the trial transcript and evidence in the light most favorable to the Commonwealth, I find that any rational trier of fact could have found beyond a reasonable doubt that petitioner was a felon and possessed a firearm and two controlled substances, in violation of Virginia Code § 18.2-250(A) and § 18.2-308.2. The Commonwealth's evidence established that petitioner sold a .38 caliber pistol to Howard in a controlled purchase with law enforcement and that petitioner knowingly possessed methamphetamine and Oxycodone without a prescription upon his arrest.

Petitioner does not present clear and convincing evidence that the trial court resolved any factual issue incorrectly. The trial judge gave more weight to the credibility of the Commonwealth's witnesses, the investigators, informant, and eyewitnesses, versus the credibility of the defense witnesses, including petitioner, his sister, and his girlfriend. I may not redetermine the credibility of the witnesses, and thus, I decline petitioner's invitation to discredit Howard's testimony because she was a paid informant, a fact known to the trial court. See

Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (stating federal habeas review does not redetermine the credibility of witnesses). Accordingly, claims 1 and 2 must be dismissed.

### C.

For claim 5(b), counsel was allegedly ineffective for not questioning Fox about her alleged statement to Warren Craven that that she perjured herself at trial and recanted her trial testimony. For claim 5(c), counsel was allegedly ineffective for not filing a motion to set aside the verdict when Craven reported Fox's incriminating statement prior to the sentencing hearing. Petitioner fails to describe sufficient prejudice to state a claim of ineffective assistance of counsel for either claim 5(b) or 5(c). See discussion supra Part III.C. (discussing the Strickland standard for ineffective assistance of counsel claims).

The Supreme Court of Virginia determined that petitioner did not establish prejudice because the record showed that "Fox did not contact counsel[;] . . . Craven claimed Fox told him that she lied at petitioner's trial[;] [and] Craven has known petitioner for fifteen years." Wooddell v. Dir. of the Dep't of Corr., No. 121429, slip op. at 8 (Va. Feb. 20, 2013). The Supreme Court of Virginia's decision is worthy of deference. In contrast to Craven's alleged assertions, Fox explained while testifying at the sentencing hearing that the only contact she had with Craven was about Craven contacting Fox's fourteen year old daughter and Fox causing a warrant to issue against Craven.[8] Petitioner cannot establish that a reasonable probability exists that the trial court would set aside the firearm conviction. Sufficient trial evidence besides Fox's testimony existed; Craven was friends with petitioner for fifteen years and did not get along with

---

[8] Fox did not say that the two events were related.

14

Fox; and Fox's testimony contradicted Craven's alleged assertions. Accordingly, claims 5(b) and 5(c) must be dismissed.

V.

For the foregoing reasons, I grant respondent's motion to dismiss and dismiss the petition for a writ of habeas corpus. Based upon my finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTER**: This 2nd day of July, 2013.

Senior United States District Judge